## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PPG INDUSTRIES, INC., a Pennsylvania corporation,** | **Case No. _____** |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **JIANGSU TIE MAO GLASS CO., LTD., a Chinese company; BENHUA WU, an individual; and MEI ZHANG, an individual.** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff, PPG Industries, Inc. ("PPG"), by and through its undersigned counsel, Quinn Emanuel Urquhart & Sullivan, LLP and Cohen & Grigsby, P.C., brings this action against Defendants Jiangsu Tie Mao Glass Co., Ltd. ("Tie Mao Glass"), Tie Mao Glass Chairman and CEO Benhua Wu, and Tie Mao Glass Engineer and Purchasing Agent Mei Zhang for their misappropriation and use of documents containing PPG's confidential and proprietary information.

1. Founded in 1883, PPG is a Pittsburgh-based company that supplies coatings, specialty materials, glass and fiberglass products to customers throughout the world. One of PPG's lines of business develops, manufactures and sells bullet-resistant transparent armor used for automotive/locomotive windshields, windscreens, and civil and military aviation applications.

2. Tie Mao Glass—a China-based manufacturer of bulletproof and transparent armor used for automotive/locomotive windshields, windscreens, and sea vessels/military aviation—is

a competitor of PPG.   On or before March 2013, Tie Mao Glass contacted retired PPG Senior Research Associate Thomas Rukavina and solicited information regarding Rukavina's relationship with PPG, including whether he signed any type of confidentiality agreement or non-compete agreement with PPG and whether he possessed information regarding PPG's proprietary technologies and products.   In response, Rukavina confirmed that following his retirement he remained bound by confidentiality agreements with PPG, but nevertheless offered to sell PPG technology to Tie Mao Glass in exchange for, among other things, employment and a signing bonus of $80,000.

3.      Thereafter, Tie Mao Glass retained Rukavina and paid him regularly.   In the summer of 2014, Tie Mao Glass flew Rukavina to California and to Michigan to meet with its representatives to discuss, among other things, materials and equipment that Tie Mao Glass would need to begin its new production lines under Rukavina's direction using PPG's stolen technologies.

4.      On or around June 19, 2014, Rukavina sent an email to two Tie Mao Glass employees, Benhua Wu and Mei Zhang, that attached a document that included the content of a PPG-owned confidential and proprietary report and instructed them that "[t]his should be more than enough to get started."   On or around June 21, 2014, Rukavina sent another email to Wu and Zhang identifying PPG technology he could "[d]eliver to [Tie Mao Glass]."

5.      On or about February 5, 2015, Zhang sent an email to a PPG sub-contractor that manufactured high-speed transportation window molds for PPG.   Using PPG's proprietary drawings and pictures for Defendants' benefit, Zhang's email solicited the sub-contractor to manufacture "the same molds" that were manufactured for PPG.

6.      Rather than fulfill the order, however, the sub-contractor promptly notified PPG of Tie Mao Glass' request.    On February 6, 2015, PPG alerted the FBI to a potential theft of PPG's confidential and proprietary information.

7.      In response to Zhang's February 5, 2015 request, the PPG sub-contractor asked Zhang for additional information regarding Tie Mao Glass' order.    On or around February 13, 2015, Rukavina responded directly to the sub-contractor's inquiries in an email.    In Rukavina's email, he falsely identified himself as a "Senior Research Associate" of PPG and misrepresented, among other things, that "PPG is transferring technology to [Tie Mao Glass] including the molds that you fabricated for us."

8.      Subsequently, the FBI executed a search warrant at Rukavina's home and email providers.    On information and belief, the FBI located additional documents containing PPG confidential and proprietary information including, among other things: descriptions and development plans for new products, experiment descriptions and results, product test results, and project reports.    Many of those documents were specifically labeled as "confidential" or "proprietary."    On information and belief, the FBI also executed a search warrant on Zhang's property in California where agents collected documents within the scope of the search warrant.

9.      On May 8, 2015, the United States arrested and charged Rukavina with theft of trade secrets pursuant to 18 U.S.C. § 1832.    After Rukavina's detention hearing on May 26, 2015, Rukavina was released from custody on bond and placed under house arrest.    Rukavina died on or about June 5, 2015.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 28 U.S.C. § 1964 because PPG's claims arise from Defendants' prohibited

activities in violation of 18 U.S.C. § 1962, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.   This Court has supplemental jurisdiction over PPG's state law claims pursuant to 28 U.S.C. § 1367.

11.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because a substantial part of the events giving rise to PPG's claims occurred in this District, and because Defendants transacted their affairs in this District.

<b>PARTIES</b>

12.   PPG Industries, Inc., is a Pennsylvania corporation with a principal place of business in Pittsburgh, Pennsylvania.   PPG is a global supplier of coatings, specialty materials, glass and fiberglass.   PPG's transparencies business provides specialized aircraft windshields, windows, and transparent armor to the commercial, regional, military and general aviation segments.

13.   Jiangsu Tie Mao Glass Co., Ltd., is a Chinese company with a principal place of business in Natong, China.   Founded in 1984, Tie Mao Glass manufactures glass for a variety of applications including: hollow glass and front windshields for locomotives; tempered glass and laminated glass for automobiles; and bullet-resistant glass for, among other uses, military aircraft and sea vessels.   In the United States, Tie Mao Glass established its presence by, among other things: importing its products through the United States as recently as April 13, 2015; upon information and belief, acting as a supplier for a U.S.-based company with an operational presence in North Carolina; establishing and conducting business from a bank account in the United States at Bank of America; participating in trade expositions in the United States; and maintaining a presence in California, where it is capable of receiving products manufactured in the United States and shipping those materials back to China.   In this District, among other

things, Tie Mao Glass retained Rukavina as one of its United States-based technical contacts and paid Rukavina in excess of $40,000 for services furnished from this District; on March 12, 2015, March 30, 2015, and May 7, 2015, electronically transferred and/or deposited payments to Rukavina in the amounts of $20,000, $10,000, and $10,000 respectively into a PNC bank account established and based in this District; unlawfully used PPG's proprietary trade secrets to communicate with at least one company in this District; and regularly used email and telephonic communications with both Rukavina and at least one other company in this District to solicit the manufacture of "the same molds" that were used for certain PPG projects from this company, a sub-contractor to PPG located in this District.

14.     Benhua Wu, Chairman and CEO of Tie Mao Glass, resides at an unknown location in China and has worked for Tie Mao Glass since at least 2011.

15.     Mei Zhang, an Engineer and Purchasing Agent for Tie Mao Glass, is a resident of California who lives in Whittier, California.

## FACTUAL ALLEGATIONS

### A.     RUKAVINA BEGAN HIS EMPLOYMENT WITH PPG SUBJECT TO MULTIPLE CONFIDENTIALITY AGREEMENTS.

16.     On or around May 2, 1977, Rukavina began his employment at PPG as a chemist assigned to PPG's Aircraft and Specialty Products Business Unit.   On that day, as part of his new employment, Rukavina executed an agreement wherein he acknowledged that he was bound by certain provisions and restrictions regarding PPG's confidential information, such as the technologies and trade secrets upon which PPG's business depends ("Employee's Agreement"). Pursuant to the Employee's Agreement, Rukavina acknowledged and agreed that, among other things:

- any inventions, discoveries and suggestions that are made or conceived by Rukavina, either solely or jointly with others, while employed by PPG, whether during working hours or not, shall be and remain the sole property of PPG;

- Rukavina will not disclose to any person without PPG's written consent, either during or subsequent to his employment, any of PPG's trade secrets or other confidential information; and

- upon cessation of Rukavina's employment with PPG, Rukavina will deliver to PPG all records of any nature related to the company business including all copies thereof.

17.     Since then and throughout his employment with PPG, Rukavina was active in research and development projects across multiple PPG Business Units including: Aerospace (Aircraft and Specialty Products), Automotive Glass, Flat Glass, and Optical.   Based on the knowledge and expertise Rukavina developed at PPG, other PPG Business Units recruited Rukavina as a consulting scientist from time to time.   As such, Rukavina had extensive exposure to PPG's manufacturing process technologies, including work on-site at different PPG facilities.

18.     In or around 1987, Rukavina began working on projects that PPG identified as "classified" projects.   In anticipation of this work, on July 24, 1987 Rukavina executed a Classified Projects Agreement of Confidentiality ("Classified Projects Agreement") wherein he acknowledged and agreed to, among other things:

- not disclose any information acquired, developed or otherwise known to Rukavina which relates to any PPG Classified Project to which Rukavina is given access;

- not use or assist in the use of any information respecting any PPG Classified Project without PPG's prior consent other than in the performance of Rukavina's assigned duties for PPG;

- that the Employee's Agreement remains in effect and the confidential information therein is not superseded by the Classified Projects Agreement; and

- that any information related to a PPG Classified Project which is subsequently classified as no longer being Classified shall remain PPG's confidential information subject to the Employee's Agreement.

19.     Based, in part, on the Classified Projects Agreement, PPG allowed Rukavina to work on a variety of product and process technologies PPG was researching and developing.

20.     On August 24, 1990, Rukavina also executed an additional agreement of confidentiality ("Computer Confidentiality Agreement") wherein he acknowledged and agreed that, among other things:

- Rukavina shall not use or assist any person in the use of any of PPG's confidential or proprietary information without PPG's prior written consent other than in the performance of duties assigned to him by PPG; and

- Rukavina's Employee's Agreement remains in effect and the confidential obligations therein are not superseded by this agreement.

21.     Rukavina's employment at PPG ended on July 31, 2012.   On that day, in connection with the cessation of his employment, Rukavina executed a voluntary security debriefing statement ("Debriefing Statement") wherein he confirmed, among other things:

- that he returned and has not removed, and will not remove, from the premises of PPG, or any of its subsidiaries or joint ventures to which PPG is a party, any confidential or proprietary equipment, materials, documents, computer disks, machine readable data, or other written matter whether or not prepared or written by Rukavina to which he had access by reason of his employment by PPG, with certain exceptions for materials that PPG reviewed and approved for removal, which do not contain confidential or proprietary information;

- that he did not and will not, in any manner, disclose to any party, any confidential or proprietary information of which he gained knowledge by reason of his employment by PPG;

- his continuing obligation to PPG not to disclose, in any manner, to any party, and/or not to use for the benefit of any party, any confidential or proprietary information which he gained knowledge of by being employed by PPG;

- that he had read the Employee's Agreement and Classified Projects Agreement that he had previously signed and understood the non-disclosure obligations to which he had agreed; and

- that he received a copy of the Employee's Agreement on July 31, 2012.

22.     At the time Rukavina signed the Debriefing Statement, he knew that he had in his possession documents, electronic files, and tangible items containing PPG's confidential and proprietary information in violation of, among other things, his obligations under the Debriefing Statement.

**B.     TIE MAO GLASS SOLICITED RUKAVINA FOR PPG'S CONFIDENTIAL AND PROPRIETARY INFORMATION.**

23.     On or before March 2013, a Tie Mao Glass representative contacted Rukavina by email soliciting information from Rukavina regarding his relationship with PPG and his ability and willingness to share PPG's confidential and proprietary information.    In the email, the Tie Mao Glass representative specifically asked Rukavina whether he signed "any type of confidential agreement and/or non-competitive agreement with PPG" and/or whether "the technology used which will be used . . . violating [*sic*] PPG's IP."

24.     Despite the fact that Rukavina executed multiple confidentiality agreements, and despite the fact that he reviewed and acknowledged the confidentiality and proprietary information covenants therein when he executed the Debriefing Statement, on or around March 2, 2013, Rukavina responded to Tie Mao Glass' request in an email by writing, in part:

> . . . When you join and when you leave PPG you are forced to sign these documents.    Of [*sic*] you follow these documents as written you could never work again.    I was forced out but did not sue.    I signed a document stating I would not sue. . . .

25.     On February 22, 2014, Rukavina offered to sell Tie Mao Glass access to PPG technology in exchange for, among other things, employment and a signing bonus of $80,000. Rukavina wrote:

> Attached is my work history/accomplishment.    I will follow with 3 more emails: awards, press releases and program pictures.    Not all of the programs but the most recent.

It is probably more than you need but I wanted to show you that I have very broad knowledge as I was one of the few at the PPG Glass Research Center that worked on projects with other scientists in other Divisions, I.E. Coatings and Resins R&D, Chemicals Group R&D, Fiber Glass R&D, and the Flat Glass Division.

. . .

. . . I am thinking of working for about 5 years but if things go well and I like working there it could be longer.    I also have access to other ex-PPG employees, some which have started their own companies and some retired.

**C.     TIE MAO GLASS RETAINED RUKAVINA AND ACQUIRED PPG'S CONFIDENTIAL AND PROPRIETARY INFORMATION.**

**1.      PPG's Proprietary Report.**

26.    As part of PPG's core business, PPG researched and developed confidential and proprietary information including, among other things, a report that details the process to manufacture windows to be used in commercial aircraft ("Proprietary Report").    To PPG's knowledge, no other company in the industry has the technology outlined in the Proprietary Report.

27.    Only authorized PPG employees have access to the Proprietary Report, which was marked "PPG Confidential" on each page.

**2.      Tie Mao Glass Acquired The Proprietary Report And Retained Rukavina Who Offered To Deliver PPG's Technologies To Tie Mao Glass.**

28.    After a series of communications in 2013, in 2014 Tie Mao Glass retained Rukavina and paid him on a regular basis.    In the summer of 2014, Tie Mao Glass flew Rukavina to California and to Michigan to meet with its representatives, including Defendants Zhang and Wu, to discuss materials and equipment that Tie Mao Glass would need to begin the manufacture of new products under Rukavina's direction.

29.     On or around June 19, 2014, Rukavina sent Tie Mao Glass Chairman and CEO Wu and Engineer/Purchasing Agent Zhang a document that was identical to the Proprietary Report in all material respects ("Stolen Report").

30.     On or around June 21, 2014, Rukavina sent another email to [B.C.] and Zhang summarizing "everything [he] can deliver to [Tie Mao Glass]," including some technologies that were outside Rukavina's expertise and beyond his former access authority at PPG.

**D.     TIE MAO GLASS USED PPG'S CONFIDENTIAL AND PROPRIETARY INFORMATION TO SOLICIT PPG'S SUB-CONTRACTOR TO MANUFACTURE "THE SAME MOLDS" THEY MAKE FOR PPG.**

31.     On or about February 5, 2015, Zhang sent an email to a PPG sub-contractor that manufactured high-speed transportation window molds for PPG.   Zhang's email solicited the sub-contractor to manufacture "the same molds" that were used for certain PPG projects that develop high speed transportation windows by stating, among other things:

> [H]ereafter you can find the pictures which we have found that you were the vendor for PPG project.   These tooling are for casting plastics of polyurethane. My company [Tie Mao Glass] in China has the similar project and we want to order the same molds from you company.   Our project in China is mainly specialized in the windows for the high speed train.   The molds will be in great quantity in future.   Now, we want order 5 sets per the picture with mold and cart together.

Attached to Tie Mao Glass' February 5, 2015 email was a photo of molds on a cart and a drawing of a metal mold; these pictures were from PPG's Proprietary Report.

32.     Rather than fulfilling the order, the sub-contractor notified PPG of Tie Mao Glass' request.   On February 6, 2015, PPG alerted the FBI of a potential theft of PPG's confidential and proprietary information.

33.     In response to Zhang's February 5, 2015 request, the PPG sub-contractor asked Zhang for additional information regarding Tie Mao Glass' order.

34. On or around February 13, 2015, Rukavina responded to the sub-contractor's inquiries to Zhang in an email directly to the sub-contractor where he falsely identified himself as a "Senior Research Associate" of PPG and misrepresented, among other things, that "PPG is transferring technology to [Tie Mao Glass] including the molds that you fabricated for us." Specifically, Rukavina wrote:

> The size of the molds needed are different from those that [M.Z.] provided. PPG is transferring technology to [Tie Mao Glass] including the molds that you fabricated for us. [Tie Mao Glass] is currently building a production facility. The projected volumes are very high and will require a high number of molds of 4 different sizes. Hopefully you can help design and fabricate these molds. I can be reached at 412-[xxx-xxx]. I am currently at home as I had hip replacement surgery a week ago.

35. Additionally, on February 18, 2015, Rukavina sent another email to the PPG sub-contractor stating:

> I was the project leader on the program but am a chemist by training. I have the drawings but if you have the records as to what you shipped to us last that is what we would want. I will send you the size of the glass molds that fit into the metal molds and look at the drawings in more detail. We are transferring production to [Tie Mao Glass] near Shanghai so either you can ship the molds and Carts to China, or to [M.Z.] in California and she can ship to China. [Tie Mao Glass] will pay you directly.

36. The PPG sub-contractor did not fulfill Tie Mao Glass' order.

## E.  THE FBI'S SEARCH OF RUKAVINA'S EMAIL REVEALED THAT TIE MAO GLASS KNEW THE CONFIDENTIAL AND PROPRIETARY INFORMATION BELONGED TO PPG.

37. On or about February 24, 2015, agents of the FBI obtained a search warrant for Rukavina's email account. The following excerpts are from internal correspondence between Tie Mao Glass and Rukavina regarding their attempt to obtain from the PPG sub-contractor molds created with PPG trade secrets and using PPG technology.

38.     On February 5, 2015, Rukavina sent Zhang an email attaching PPG's confidential and proprietary photos and drawings of PPG's molds to solicit the same molds from PPG's sub-contractor.   That same day, Rukavina sent a separate email to Zhang warning:

> The drawings are labeled "PPG Proprietary" so my guess is that they will not make them for us.   Someone else may.

39.     Shortly thereafter, also on February 5, 2015, Zhang responded to Rukavina by email stating:

> I removed the logo of PPG and their company name from the pictures.   Hope I did in a legal way.   Just sent an email to the purchasing manager.   Let's wait [for] the feedback from him.

40.     Subsequently, on February 11, 2015, Zhang sent an email to Rukavina stating:

> TOM,
>
> [The sub-contractor] replied to my inquiry.
>
> Do you think it's better [to] let them know you or not?   Please confirm me [*sic*] and reply on the questions concerning the detail information on the drawings.

41.     In response, on that same day, Rukavina replied, writing:

> Yes you can give them my name and number.   I will just tell them that I am at PPG and we are shifting manufacturing to [Tie Mao Glass] in China.   These molds will be for the size and thickness that I cast at PPG.   Let me look at the actual sizes for TMP and we can have maybe 8 molds for the PPG Sizes and cart.

42.     Between March and May 2015, Tie Mao Glass paid Rukavina at least $40,000 through an unnamed co-conspirator.   On March 12, 2015, March 30, 2015, and May 7, 2015, Tie Mao Glass and/or Zhang (on behalf of Tie Mao Glass) electronically transferred and/or deposited payments for Rukavina's benefit into the PNC bank account of the unnamed co-conspirator in the amounts of $20,000, $10,000, and $10,000 respectively.

**F.      THE FBI'S SEARCH OF RUKAVINA'S RESIDENCE.**

43.      In addition to executing a search warrant of Rukavina's email account, the FBI also executed a search warrant at Rukavina's residence.   The FBI recovered a collection of hard-copy documents comprised of PPG's confidential and proprietary information including, among other things: descriptions and development plans for new products; project progress reports; experiment descriptions and results; and product qualification test results.   The recovered documents address a variety of PPG technologies and products.   The information in these documents has significant commercial and financial value to PPG.

44.      On May 8, 2015, the United States arrested and charged Rukavina with criminal theft of trade secrets pursuant to 18 U.S.C. § 1832 for his involvement in the theft of PPG's confidential and proprietary information and disclosure of that information to Defendants. After Rukavina's detention hearing on May 26, 2015, Rukavina was released from custody on bond and placed under house arrest.   Rukavina died on or about June 5, 2015.

45.      On information and belief, the FBI also executed a search warrant on Zhang's property in California and collected information and documents within the scope of that search warrant.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO)—18 U.S.C. § 1962(c)**

46.      Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all of the preceding paragraphs.

47.       Defendants Tie Mao Glass, Chairman and CEO Benhua Wu, and Engineer/Purchasing Agent Mei Zhang are each "persons" as defined under 18 U.S.C. § 1961(3).

48.     Tie Mao Glass, Wu, Zhang, and Rukavina, as well as others unknown at the time of the filing of this complaint (the "Conspirators") were associates and conducted the affairs of an association-in-fact enterprise ("Tie Mao Enterprise") through a pattern of racketeering activity.

49.     The Tie Mao Enterprise was an ongoing organization beginning as early as March 2013.   From 2013 through the date of the filing of this complaint, the Tie Mao Enterprise engaged in a scheme to defraud and to harm PPG's business and property by, among other things, wrongfully obtaining and exploiting certain PPG confidential and proprietary information with the intent to take advantage of PPG's research and development efforts and to use PPG's confidential and proprietary information to develop, manufacture and market products that compete directly with PPG products.   Between 2013 and the date of this complaint, some or all of the Conspirators travelled, including travel across the United States' borders, in furtherance of the conspiracy.   This travel included meeting on at least two occasions, in California and in Michigan, to discuss what the Tie Mao Enterprise would need to effectuate its scheme to defraud and to harm PPG's business and property, including but not limited to discussing unlawful misappropriation and use of PPG's confidential and proprietary information and the materials and equipment necessary to take full commercial advantage of that information.

50.     The Conspirators of the Tie Mao Enterprise functioned as a continuous unit, with a framework for making or carrying out decisions, which was separate and apart from the pattern of racketeering activity in which the Tie Mao Enterprise engaged, *i.e.*, the underlying pattern of related racketeering activity discussed below.   As part of his role in the Tie Mao Enterprise, Rukavina was responsible for delivering PPG's trade secrets and for making false statements to those possessing PPG confidential and proprietary information to induce them to provide such

information to the Tie Mao Enterprise.    Wu and Zhang, for their parts, liaised and coordinated Rukavina's unlawful disclosures with Tie Mao Glass' China-based operation and made payments to Rukavina from China to obtain and ensure his continued participation in and furtherance of the conspiracy.    Tie Mao Glass controlled the Tie Mao Enterprise by employing Wu and Zhang and retaining Rukavina, as well as by potentially providing the means and resources required to begin commercial production of products based on or with the benefit of PPG's confidential and proprietary information.    As to decisions, Rukavina offered to provide and provided the Tie Mao Enterprise with PPG's confidential and proprietary information and Tie Mao Glass, through Wu and/or Zhang, determined if and how the Tie Mao Enterprise would use the information provided and also determined how the Tie Mao Enterprise would proceed.

51.    The Conspirators' activities, and the activities of the Tie Mao Enterprise alleged herein, each affect interstate or foreign commerce because PPG's confidential and proprietary information is used to supply coatings, specialty materials, glass and fiberglass products to its customers throughout the United States and the world, financial transactions were made in both interstate and foreign commerce, and the Conspirators traveled and transmitted information across both international and interstate borders.

52.    From at least March 2013 and continuing to today, the Conspirators have conducted and participated in a pattern of related racketeering activity (as defined by 18 U.S.C. §§ 1961(1), (5)) to conduct the Tie Mao Enterprise's affairs including, among other things:

a.    wire fraud in violation of 18 U.S.C. § 1343 by using the telephone and emails to effectuate its scheme to defraud and obtain PPG's confidential and proprietary information under false and fraudulent pretenses;

b.       violations of the Travel Act, 18 U.S.C. § 1952, by engaging in interstate and foreign travel intending to distribute the proceeds of unlawful activity and by using facilities in interstate or foreign commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and engaged in and/or attempted to engage in such unlawful activity;

c.       violations of 18 U.S.C. § 1956 through the improper transmission of a monetary instrument or funds across a United States border to promote unlawful activity including the predicate acts set forth above, as well as additional unlawful activity including, but not limited to, the specified unlawful activity of engaging in an offense with respect to which the United States would be obligated by a multilateral treaty (*i.e.*, the United Nations Convention Against Transnational Organized Crime and the Protocols Thereto ("UNTOC")), either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States, and/or engaging in violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

53.     The Conspirators' scheme and the above referenced racketeering activities amounted to a common course of conduct intended to obtain PPG's trade secrets wrongfully, including through knowingly deceptive and fraudulent statements.

54.     The Conspirators' unlawful conduct in violation of 18 U.S.C. § 1962(c) has proximately caused and continues to cause PPG to suffer substantial injuries to its business and property.   These damages include significant losses, including cost of creation, research and development costs and losses attributable to lost past and future sales.

55.     As a result of Defendants' unlawful conduct under 18 U.S.C. § 1962(c), PPG is entitled, pursuant to 18 U.S.C. §§ 1964(a) and (c), to equitable and injunctive relief, treble damages, costs, and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

## CONSPIRACY TO VIOLATE THE RICO ACT—18 U.S.C. § 1962(d)

56.     Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all of the preceding paragraphs.

57.     The Conspirators violated the RICO Act, under 18 U.S.C. § 1962(d), by conspiring to engage in prohibited activities in violation of 18 U.S.C. § 1962(c).

58.     From 2013 through the date of the filing of this complaint, the Conspirators of the Tie Mao Enterprise conspired and agreed to engaged in a scheme to defraud and to harm PPG's business and property by, among other things, wrongfully obtaining and exploiting certain PPG confidential and proprietary information with the intent to take advantage of PPG's research and development efforts and to use PPG's confidential and proprietary information to develop, manufacture and market products that compete directly with PPG products by engaging in, among other things:

a.     wire fraud in violation of 18 U.S.C. § 1343 by using the telephone and emails to effectuate its scheme to defraud and obtain PPG's confidential and proprietary information under false and fraudulent pretenses;

b.     violations of the Travel Act, 18 U.S.C. § 1952, by engaging in interstate and foreign travel intending to distribute the proceeds of unlawful activity and by using facilities in interstate or foreign commerce to promote, manage, establish, carry on, or

facilitate the promotion, management, establishment, or carrying on, of any unlawful

activity, and engaged in and/or attempted to engage in such unlawful activity;

      c.      violations of 18 U.S.C. § 1956 through the improper transmission of a

monetary instrument or funds across a United States border to promote unlawful activity

including the predicate acts set forth above, as well as additional unlawful activity

including, but not limited to, the specified unlawful activity of engaging in an offense

with respect to which the United States would be obligated by a multilateral treaty (*i.e.*,

the United Nations Convention Against Transnational Organized Crime and the Protocols

Thereto ("UNTOC")), either to extradite the alleged offender or to submit the case for

prosecution, if the offender were found within the territory of the United States, and/or

engaging in violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

      59.      The Conspirators' conspiracy to engage in unlawful conduct in violation of 18

U.S.C. § 1962(c) has proximately caused and continues to cause PPG to suffer substantial

injuries to its business and property.   These damages include significant losses, including cost

of creation, research and development costs and losses attributable to lost past and future sales.

      60.      As a result of Defendants' unlawful conduct under 18 U.S.C. § 1962(d), PPG is

entitled, pursuant to 18 U.S.C. §§ 1964(a) and (c), to equitable and injunctive relief, treble

damages, costs, and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF

### TRADE SECRET MISAPPROPRIATION--12 Pa. Cons. Stat. Ann. §§ 5301 *et seq.*

      61.      Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all of

the preceding paragraphs.

62.     Defendants have in their possession, custody or control documents and electronic files that contain PPG's confidential and proprietary information that includes, among other things, formulas, drawings, patterns, programs, devices, methods, techniques, and processes regarding PPG's core business.

63.     The information contained in these documents and files are trade secrets (as defined under 12 Pa. Cons. Stat. Ann. § 5302) because, among other things, the information contained therein derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.   The information contained in the documents and files in Defendants' possession is confidential and proprietary information developed by PPG for its own exclusive use, unavailable to any of PPG's competitors; and, as a result of that confidentiality, has significant value and would cause PPG significant harm if the proprietary information were unlawfully misappropriated.

64.     Additionally, the information contained in these documents and files are trade secrets (as defined under 12 Pa. Cons. Stat. Ann. § 5302) because, among other things, the information contained therein is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.   For example, PPG efforts to maintain the secrecy of its proprietary information include, among other things: identifying and describing confidential and proprietary information that should not be disclosed; entering into agreements with employees, contractors, sub-contractors and customers not to disclose PPG confidential and proprietary information; limiting access to confidential and proprietary electronic information to authorized and approved personnel; prohibiting disclosure or sharing of authorization information (passwords, electronic keys, etc.); restricting and controlling physical access to PPG facilities; restricting and

controlling what information may be transmitted or taken from PPG facilities; restricting physical and electronic locations where confidential and proprietary information may be stored; and soliciting the assistance of law enforcement to address potential thefts of its confidential and proprietary information.

65.     Pursuant to 12 Pa. Cons. Stat. Ann. § 5302, Defendants misappropriated PPG's trade secrets when they wrongfully and improperly obtained documents and files containing PPG confidential and proprietary information related to its formulas, drawings, patterns, programs, devices, methods, techniques, and processes for technology and products by, among other things as set forth herein, wrongfully inducing and paying Rukavina to breach his duties of confidentiality to PPG by soliciting from him and obtaining from him PPG's confidential and proprietary information.

66.     Defendants acquired and/or used PPG's trade secrets without PPG's express or implied consent when they, among other things, used information derived from the Proprietary Report to solicit a PPG sub-contractor to manufacture "the same molds" that were used for PPG's projects.

67.     Defendants used improper means to acquire knowledge of PPG's trade secrets by engaging in conduct including, among other things: theft, misrepresentations, and/or breaches or inducement of breaches of a duty to maintain secrecy under various confidentiality agreements.

68.     At the time Defendants acquired and/or used PPG's confidential and proprietary information, they knew or had reason to know that they acquired the trade secrets by improper means because they, themselves, engaged in improper conduct to acquire the trade secrets.

69.     Alternatively, when Defendants acquired and/or used PPG's confidential and proprietary information, they knew the trade secrets derived from a breach of Rukavina's duty to

PPG to maintain their secrecy.    Rukavina confirmed to Defendants that he was under

contractual obligations not to disclose PPG's confidential and proprietary information.

Additionally, PPG marked each page of the Proprietary Report and other PPG documents in his

possession as "PPG Proprietary."    Despite this warning and admission however, Zhang

intentionally removed PPG's logos and proprietary statements from PPG's confidential and

proprietary documents before sending them to a PPG sub-contractor for Defendants' own use.

70.    Defendants' willful and malicious misappropriation of PPG's trade secrets, in

violation of 12 Pa. Cons. Stat. Ann. §§ 5301 *et seq*., has proximately caused and continues to

cause PPG to suffer substantial loss and damages.    These damages include the cost of creation,

research and development costs and losses attributable to lost past and future sales.

71.    As a result of Defendants' willful and malicious misappropriation of PPG's trade

secrets, pursuant to 12 Pa. Cons. Stat. Ann. § 5304, PPG is entitled to recover compensatory

damages in the form of actual losses, the unjust enrichment caused by misappropriation that is

not taken into account in computing actual losses, and exemplary damages not to exceed twice

any award made for monetary damages.

### FOURTH CLAIM FOR RELIEF

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

72.    Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all of

the preceding paragraphs.

73.    The Employee's Agreement, Classified Projects Agreement, and the Computer

Confidentiality Agreement between Rukavina and PPG prohibited Rukavina from, among other

things, stealing, misappropriating, and disclosing PPG's confidential and proprietary information

to Tie Mao Glass.

74.     Defendants knew that Rukavina had contractual obligations to PPG requiring him not to disclose confidential or sensitive PPG information.

75.     Defendants intended to harm PPG by purposefully inducing and/or causing Rukavina to breach the terms of the above referenced agreements.    Indeed, among other things, Defendants solicited from Rukavina PPG's confidential and proprietary information; induced Rukavina to breach the non-disclosure and non-use terms of the above agreements by paying Rukavina, at least in part, for his unlawful disclosures and use; designated Rukavina as its United States-based technical contact to procure from a PPG sub-contractor "the same molds" it manufactured for PPG; and used Rukavina's breaches to misappropriate PPG's trade secrets by passing off the content of PPG's Proprietary Report as their own.

76.     Defendants neither had a privilege nor a justification for their unlawful conduct referenced herein.

77.     Defendants' unlawful and intentional interference with the contracts between Rukavina and PPG directly and proximately caused, and continues to cause, PPG to suffer substantial loss and damages.    These damages include the cost of creation, research and development costs and losses attributable to lost past and future sales.

## FIFTH CLAIM FOR RELIEF

## COMMON LAW UNFAIR COMPETITION

78.     Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all of the preceding paragraphs.

79.     Defendants' conduct as described herein rises to the level of unfair competition in violation of Pennsylvania common law.

80.     Defendants' conduct has directly and proximately caused and continues to cause PPG to suffer substantial loss and damages.    These damages include the cost of creation, research and development costs and losses attributable to lost past and future sales.

81.     To the extent that Defendants' conduct was willful, purposeful, knowing, malicious, and without regard for the rights and interests of PPG, Defendants are also liable for punitive damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

82.     Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all of the preceding paragraphs.

83.     As part of PPG's core business, PPG invests substantial resources to research and develop, among other things, its confidential and proprietary information.    PPG's trade secrets and proprietary information have significant value, including the cost of creation, research investments, industry advantages, and future sales potential.

84.     Defendants unjustly usurped and benefitted from PPG's research and development when they unlawfully acquired and misappropriated PPG's confidential and proprietary information referenced herein.    Defendants used and continue to benefit from PPG's confidential and proprietary information.

85.     Defendants' theft and retention of PPG's confidential and proprietary information is both inequitable and unjust.

86.     Defendants' unjust enrichment is significant, including cost of creation, research and development investments, industry competitive advantages, and future sales.    It would be

inequitable for Defendants to retain the benefits arising from PPG's confidential and proprietary information without, among other equitable remedies, payment of value.

## SEVENTH CLAIM FOR RELIEF

## CONSTRUCTIVE TRUST

87.     Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all of the preceding paragraphs.

88.     As part of PPG's core business, PPG invests substantial resources to research and develop, among other things, its confidential and proprietary information.    PPG's trade secrets and proprietary information have significant value, including the cost of creation, research investments, industry advantages, and future sales potential.

89.     Defendants acquired PPG's confidential and proprietary information, and the direct and indirect benefits arising therefrom, through fraud and undue influence by, among other things, misappropriating its trade secrets as set forth herein.

90.     Additionally, Defendants acquired PPG's confidential and proprietary information, and the direct and indirect benefits arising therefrom, by inducing Rukavina to breach his confidential and contractual obligations to PPG under his Employee's Agreement, Classified Projects Agreement, Debriefing Statement and Computer Confidentiality Agreement.

91.     The direct and indirect benefits Defendants realized and continue to realize though their unlawful and inequitable conduct have significant value, including the research and development investments, industry competitive advantages, and future sales.    Concurrently, Defendants' unlawful and inequitable conduct caused, and continues to cause, PPG to suffer substantial loss and damages.    These damages include the cost of creation, research and development costs and losses attributable to lost past and future sales.    It would be inequitable

for Defendants to retain these direct and indirect benefits arising from PPG's confidential and proprietary information without, among other forms of equitable relief, payment of value.

### JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury trial of all claims asserted in this Complaint so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff PPG respectfully requests that the Court enter judgment in its favor and against Defendants Jiangsu Tie Mao Glass Co., Ltd., Benhua Wu, and Mei Zhang as follows:

A.  Declaring that Defendants violated the RICO Act in violation of 18 U.S.C. § 1962(c);

B.  Declaring that Defendants conspired to violate the RICO Act in violation of 18 U.S.C. § 1962(d);

C.  Declaring that Defendants misappropriated PPG's trade secrets in violation of the Pennsylvania Trade Secret Act, 12 Pa. Const. Stat. Ann. §§ 5301-5308;

D.  Declaring that Defendants' conduct rose to the level of unfair practices in violation of Pennsylvania common law;

E.  Declaring that Defendants intentionally interfered with the contractual relationships between PPG and Rukavina;

F.  Declaring that Defendants unjustly enriched themselves by usurping and misappropriating PPG's confidential and proprietary information;

G.  Imposing a constructive trust over PPG's confidential and proprietary information;

H.  Awarding all monetary damages as allowed by law, including treble damages;

I.      Awarding punitive and exemplary damages as allowed by law, including under 12 Pa. Cons. Stat. Ann. § 5304(b);

J.      Awarding treble damages as allowed by law, including under 18 U.S.C. § 1964(c);

K.      Awarding reasonable attorneys' fees and costs as allowed by law, including under 18 U.S.C. § 1964(c), and 12 Pa. Cons. Stat. Ann. § 5304(b);

L.      Awarding pre-and post-judgment interest as allowed by law;

M.      Preliminarily enjoining Tie Mao Glass and its respective employees, officers, agents and representatives from using, retaining, and/or referencing in any way, any of PPG's documents, and any information contained therein, until hearing, and thereafter permanently enjoining it from the same;

N.      Directing Defendants to immediately return all of PPG's documents, and also to return and furnish to PPG any documents that reference in any way the information contained therein, and all copies of the same whether in hard or electronic form;

O.      Awarding all other equitable relief as allowed by law; and

P.    Awarding such other and further relief as the Court may deem to be just and

proper.

Dated:   July 24, 2015

*/s/ Robert M. Linn*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Jon Corey (*pro hac vice* Admission Pending)
William A. Burck (*pro hac vice* Admission Pending)
Alexander J. Merton (*pro hac vice* Admission
Pending)
777 Sixth Street NW, 11th Floor
Washington, DC 20001-3706
(202) 538-8000

COHEN & GRIGSBY, P.C.
Robert M. Linn
PA Id. No. 44777
Ingrid A. Bohme
PA Id. No. 309157
625 Liberty Avenue
Pittsburgh, PA 15222-3152
(412) 297-4900

Attorneys for Plaintiff PPG Industries, Inc.

2144270.v1