# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PPG INDUSTRIES, INC.,          )
                                     )
        Plaintiff,          )
                                     )     2:15-cv-00965
        v.              )
                                     )     Chief Judge Mark R. Hornak
JIANGSU TAI MAO GLASS CO., LTD.,    )
et al.,                             )
                                     )
        Defendants.      )
                                     )

## OPINION

### Mark R. Hornak, Chief United States District Judge

Pending before Court is a Supplemental Motion for Reasonable Attorneys' Fees, Expenses, and Costs ("Supplemental Motion") (ECF No. 172) by Plaintiff PPG Industries, Inc. ("PPG"). PPG seeks an award of attorneys' fees in the amount of $2,151,947.50 and litigation expenses and costs of $47,055.19. (ECF No. 172, at 2.)

On March 31, 2020, this Court adjudged that Defendants Jiangsu Tie Mao Glass Co., Ltd. ("TMG"), Benhua Wu, and Mei Zhang (collectively, "Defendants") "jointly and severally violated the Pennsylvania Uniform Trade Secrets Act ('PUTSA') . . . by willfully and maliciously misappropriating PPG's proprietary transparencies-related manufacturing processes" and that "Defendants are liable for PPG's reasonable attorneys' fees, expenses, and costs under" PUTSA. (ECF No. 158, at 1, 3.)

In the Court's March 31, 2020 Order, the Court "defer[red] judgment on the amount of PPG's reasonable attorneys' fees, expenses, and costs to be awarded . . . pending PPG's submission of a supplemental petition for fees, expenses, and costs consistent with the Court's Opinion" of

the same day. (*Id.* at 4.) That Opinion (the "March 31, 2020 Opinion") (ECF No. 157) required

PPG to supplement its request for fees, expenses, and costs with details that the Court identified.

(*See* ECF No. 157, at 48–55.) On June 22, 2021, PPG filed the presently pending Supplemental

Motion in response to the Court's March 31, 2020 Opinion and Order.

For the reasons explained below, the Court **GRANTS** in part PPG's Supplemental Motion

for Reasonable Attorneys' Fees, Expenses, and Costs (ECF No. 172) and **ORDERS** further

briefing from PPG and Defendants on the sole issue of whether the rates that Quinn Emanuel

actually charged PPG for professional services were reasonable within the Washington, D.C.

market for attorneys of similar experience, skill, and reputation performing services the same as

or substantially similar to those that Quinn Emanuel performed on behalf of PPG. Once the record

is complete on that outstanding issue, the Court will finalize the award of attorneys' fees, expenses,

and costs.

## I.   BACKGROUND

A prior Opinion by this Court concisely summarizes some of the relevant history of this

case:

> After PPG learned that one of its former employees stole and sold multi-million dollar trade secrets to [PPG competitor] TMG . . . , it initiated a civil action asserting several claims against TMG and two of its representatives, Benhua Wu and Mei Zhang[,] . . . under the federal RICO statute, Pennsylvania tort and contract law, and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"). (ECF No. 1.)
>
> After Defendants failed for years to answer the Complaint, PPG eventually requested an entry of default in October 2017, and the Clerk of this Court promptly obliged. (ECF Nos. 70, 80.) In May 2019, PPG moved for the entry of a default judgment and permanent injunction against Defendants on its PUTSA misappropriation claim. (ECF Nos. 106, 107.) Only at this point did Defendants enter an appearance by counsel, moving to set aside the entry of default and also opposing PPG's motion for a default judgment. (ECF Nos. 129, 130.)

> In March 2020, the Court granted PPG's Motion for default judgment and permanent injunction on its PUTSA misappropriation claim (ECF No. 106)[] and denied Defendants' Motion to Set Aside Entry of Default. (ECF Nos. 129, 157.)

(ECF No. 170, at 1–2 (footnote omitted).)[1]

In granting PPG's motion for a default judgment and a permanent injunction on the PUTSA misappropriation claim (hereinafter, "Motion for Default Judgment"), the Court concluded that Defendants' misappropriation of PPG's trade secrets was willful and malicious, and thus concluded that PPG is entitled to reasonable attorneys' fees, expenses, and costs. (ECF No. 157, at 48 ("Under PUTSA, '[a] court may award reasonable attorney fees, expenses and costs to the prevailing party . . . [if] willful and malicious misappropriation exists.'" (alterations in original) (quoting 12 Pa. Cons. Stat. § 5305)).) However, Defendants challenged the reasonableness of PPG's requested attorneys' fees, expenses, and costs, specifically the reasonableness of PPG's decision to retain Washington D.C.-based attorneys from the global law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and of the number of hours that PPG's Quinn Emanuel attorneys billed for their professional services. (*See id.* at 48–50, 53–54.)[2]

---

[1] The former PPG employee involved in the trade secrets misappropriation, Thomas Rukavina, was indicted by a federal grand jury in this District for criminal conversion of PPG's trade secrets in violation of 18 U.S.C. § 1832(a)(2), (a)(4) after an extensive federal criminal investigation. *See* Affidavit in Support of a Complaint and Arrest Warrant, *United States v. Rukavina*, No. 2:15-cr-110-DSC (W.D. Pa. May 7, 2015), ECF No. 1-1; Indictment, *United States v. Rukavina*, No. 2:15-cr-110-DSC (W.D. Pa. May 21, 2015), ECF No. 15. The prosecution of Mr. Rukavina ended when Mr. Rukavina took his own life. Motion for Leave to Dismiss Indictment, *United States v. Rukavina*, No. 2:15-cr-110-DSC (W.D. Pa. Aug. 13, 2015), ECF No. 26.

[2] Defendants do not challenge PPG's requested attorneys' fees, expenses, and costs to the extent that the request reflects the fees, expenses, and costs that PPG incurred in retaining Dentons Cohen & Grigsby P.C. ("DCG") as PPG's local counsel to assist with litigating the matter at local forum rates. In fact, Defendants argue that PPG should have litigated the matter entirely through DCG attorneys, stating that "even before the merger" between Dentons and Cohen & Grigsby, which occurred in 2020 after this litigation began, "Cohen & Grigsby, P.C. presented itself as a global law firm with experience 'in state, federal, and appellate courts throughout the country,' and intellectual property litigation, including trade secret misappropriation." (*See* ECF No. 176, at 8 n.4 (quoting an archived Cohen & Grigsby webpage that is no longer available).) Based on currently available information, Cohen & Grigsby had only three offices when PPG hired the firm, all in the United States (Pittsburgh, PA; Harrisburg, PA; and Naples, FL), and while Dentons at large is a global firm, *see* https://www.dentons.com/en/global-presence, PPG retained Cohen & Grigsby before it merged into Dentons. Thus, because Defendants do not contest the reasonableness of DCG's fees, expenses, or costs and because local Cohen & Grigsby counsel did not have a global presence when PPG retained that firm—which, as

The Court concluded that PPG appeared to be entitled to recover a substantial award of attorneys' fees, expenses, and costs. However, while the Court did not validate the substance and reasoning of all of Defendants' objections to PPG's requested fees, expenses, and costs (*see id.* at 50, 53–54), the Court concluded that PPG needed to provide more detailed information in certain respects before the Court could further consider an award of the amounts that PPG requested. The Court directed PPG to supplement its petition for attorneys' fees, expenses, and costs with the following information: (1) information as to whether counsel from the litigation forum (*i.e.*, this District) "could have provided the same level of expertise as Quinn Emanuel," to inform whether the Court should apply the "special expertise" exception to the "forum rate rule" for awarding attorneys' fees (*id.* at 51); (2) more detailed information regarding the hours that PPG's Quinn Emanuel counsel worked in delivering the legal services involved, to allow the Court to review PPG's request with the required level of scrutiny (*id.* at 53); and (3) more detailed information about the expenses and costs that PPG's Quinn Emanuel counsel incurred, especially as to travel expenses, to allow the Court to apply the requisite scrutiny to that component of the request, as well (*id.* at 53–54).

On June 22, 2021, PPG filed its Supplemental Motion for Attorneys' Fees, Expenses, and Costs (ECF No. 172). Defendants filed their Response on July 14, 2021 (ECF No. 176), and PPG then filed its Reply (ECF No. 177). With briefing as to PPG's presently pending Supplemental Motion complete, the Motion is ripe for the Court to resolve.

---

this Opinion explains, was necessary to litigate the case—this Opinion need only address PPG's request as it pertains to its retention of Quinn Emanuel and as to the services provided by the lawyers of that law firm.

## II.    LEGAL STANDARD

"[T]he size of a prevailing party's fee award" is a function of "the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.* ("*ICO II*"), 426 F.3d 694, 703 n.5 (3d Cir. 2005). A party recovering attorneys' fees may also recover reasonable expenses and costs. *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 98 (3d Cir. 2006) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225–26 (3d Cir. 1995)).

All components of an award of attorneys' fees, expenses, and costs—the attorneys' hourly rates, the number of hours the attorneys billed, and the amount of expenses and costs incurred in the litigation—must be reasonable. *See id.*; *ICO II*, 426 F.3d at 703 n.5. The party seeking attorneys' fees, expenses, and costs bears the burden of demonstrating to the court that the figures sought are reasonable. *ICO II*, 426 F.3d at 703 n.5; *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode*, 892 F.2d at 1183 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

As to the attorneys' hourly billing rates, "in most cases, the relevant rate is the prevailing rate in the forum of the litigation." *ICO II*, 426 F.3d at 705. This is known as the "forum rate rule." *Id.* However, the "special expertise" exception to the forum rate rule allows the prevailing party to recover fees "based on prevailing rates in the community in which the part[y's] attorneys practice" when the party can show that the litigation required expertise that only counsel outside of the forum possessed. *Id.* at 705–06.[3]

---

[3] The special expertise exception is one of two recognized exceptions to the forum rate rule. The other exception—which applies when forum counsel is unwilling to handle the case, *ICO II*, 426 F.3d at 705—is not at issue in this Opinion because neither party has raised it and there is no evidence in the record that that second exception applies.

No matter which market or community the court concludes is the appropriate starting point for the hourly rate determination—whether the litigation forum, or a different market because of an exception to the forum rate rule—the hourly rate charged must be reasonable as compared to the prevailing rate in the market. *See id.* at 708. The fees petitioner must "produc[e] sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case" that the petitioner's attorneys' rates are reasonable. *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). Sufficient evidence includes more than "[the] attorney's own affidavits." *ICO II*, 426 F.3d at 708.

Once the fees petitioner has sufficiently shown reasonableness of the hourly rates, the opponent to the fees request may only contest the rates "with appropriate record evidence" and with "sufficient specificity." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-cv-0134, 2016 WL 3522964, at *2 (E.D. Pa. June 28, 2016) (first citing *Smith*, 107 F.3d at 225; and then citing *ICO II*, 426 F.3d at 703 n.5). The court must then weigh the evidence and determine the reasonableness of the rate sought by "assess[ing] the experience and skill of the prevailing party's attorneys and compar[ing] their rates to the rates prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183. On the other hand, if the party seeking attorneys' fees "fails [to meet its] burden to establish a prima facie case of a reasonable hourly rate, the [c]ourt must exercise its discretion in fixing a reasonable hourly rate." *Arlington Indus., Inc.*, 2016 WL 3522964, at *2 (citing *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 630 (E.D. Pa. 1998) (citing *Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996))); *see Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) ("[T]he District Court has a positive and affirmative function in the fee fixing process, not merely a passive role.").

6

Regarding the number of hours that the prevailing party's attorneys billed, "the district court should exclude hours that are not reasonably expended," *i.e.*, hours that are "excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.3d at 1183 (citing *Hensley*, 461 U.S. at 433). The party seeking attorneys' fees must provide sufficiently detailed documentation of the hours billed such that the other party, if it objects, can do so with specificity, and such that the reviewing court can fulfill its obligation of thoroughly scrutinizing the number of hours on which the fees request is based. *See ICO II*, 426 F.3d at 703 n.5 (first citing *Rode*, 892 F.2d at 1183; and then citing *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001)).

Finally, as to expenses and costs, the level of detail the fees petitioner must provide is similar to that required as to the number of hours billed. *ICO II*, 426 F.3d at 710–14. As with the other components of an attorneys' fees, expenses, and costs petition, the petitioner must demonstrate that the expenses and costs incurred are reasonable, and the opponent may only object if it does so with sufficient specificity. *See Tenafly Eruv Ass'n, Inc.*, 195 F. App'x at 102; *ICO II*, 426 F.3d at 703 n.5; *Rode*, 892 F.2d at 1183.

### III.   DISCUSSION

For the reasons explained below, the Court concludes that PPG has sufficiently demonstrated that (1) it is entitled to the application of the special expertise exception to the forum rate rule, such that the relevant market within which to determine the reasonableness of PPG's Quinn Emanuel attorneys' hourly rates is Washington, D.C.; (2) the number of hours that PPG's Quinn Emanuel attorneys billed, for which PPG seeks attorneys' fees, is reasonable; and (3) the expenses and costs that PPG's Quinn Emanuel attorneys incurred are reasonable.

However, the Court also concludes that PPG has not presented sufficient evidence that Quinn Emanuel's hourly rates are reasonable as that term is to be applied in these circumstances.

Thus, PPG has not met its burden as the party requesting attorneys' fees, expenses, and costs to show that all components of its request are reasonable.

While the parties have provided prior briefing that generally addresses the issue of the reasonableness of its Quinn Emanuel attorneys' rates, that issue had not been the focus of the parties' arguments and was therefore not an issue that the Court addressed in its March 31, 2020 Opinion. Instead, the focus of the parties' filings as to the reasonableness of PPG's requested hourly rates has been whether the special expertise exception applies, and the Court's March 31, 2020 Opinion focused on one part of the special expertise exception analysis that PPG needed to further support—*i.e.*, whether forum-based attorneys could have provided the same expertise as Quinn Emanuel—and did not expressly address whether PPG had shown that its Quinn Emanuel attorneys' rates were reasonable. Accordingly, PPG may well have reasonably concluded that the Court did not require further evidence as to the reasonableness of Quinn Emanuel's fees within the Washington, D.C. market.

Thus, for the reasons explained below, out of fairness to the parties, the Court will order further briefing from PPG and Defendants on the sole issue of the reasonableness of Quinn Emanuel's hourly rates in this matter before the Court finalizes the hourly rates to be applied and the resulting fees award. After briefing and supporting submissions on that remaining issue are complete, the Court will determine the hourly rates to apply to PPG's fees award and will award PPG attorneys' fees based on the hours its attorneys invoiced and as submitted to the Court as well as all of PPG's claimed expenses and costs.

A. **Reasonable Hourly Rate**

i. **Relevant Market**

The first required step for the Court to determine whether PPG's claimed rates for its Quinn Emanuel attorneys are reasonable is to identify the relevant legal market on which to base the reasonableness determination. *See ICO II*, 426 F.3d at 703–07. If PPG has successfully demonstrated that the special expertise exception to the forum rate rule applies, then the Court would assess the reasonableness of Quinn Emanuel's hourly rates within the context of the market in which those attorneys practice—Washington, D.C. *See id.* at 705. If PPG has not shown that it is entitled to the special expertise exception, then the relevant market for the reasonable hourly rate analysis would be in this District—specifically Pittsburgh, PA. *See id.*

In this Court's March 31, 2020 Opinion in which it explained its bases for deferring the award of attorneys' fees, expenses, and costs, the Court concluded that PPG had demonstrated some, but not all, of the factors that would allow the Court to apply the special expertise exception to the forum rate rule and award PPG its fees based on Quinn Emanuel's billing rates—assuming those rates are otherwise reasonable. Specifically, the Court was persuaded that at the time PPG needed to hire counsel in this action, the case "appeared remarkably complex," and that Quinn Emanuel possessed the required expertise to represent PPG in the case. (ECF No. 157, at 51.) However, the Court also concluded that PPG had not sufficiently shown that forum counsel could not have provided the same level of expertise as Quinn Emanuel. (*Id.*) The Court explained that as to all factors governing whether the special expertise exception applies—complexity of the case, capabilities of the party's chosen counsel, and capabilities of forum counsel—the inquiry is forward looking and considers the state of affairs at the time the litigation began. (*Id.* at 48.) In that vein, the Court noted that "an affidavit from an appropriate decision maker at PPG may

9

provide the clearest picture of the attorney hiring process that took place at the outset of this litigation" and provide PPG the best vehicle through which to supplement its attorneys' fees request. (*Id.* at 51 n.13.)

In its Supplemental Motion, PPG asserts that "[a]t the time PPG considered potential outside litigation counsel for this matter, PPG could not identify any firm headquartered in this forum capable of providing equivalent expertise and capabilities in this case as those offered by Quinn Emanuel at the time." (ECF No. 172, at 8.) To support this assertion, PPG provides a declaration from Gretchen Roos, PPG's Corporate Counsel for Global Ethics and Compliance. (*Id.*; *see* ECF No. 172-1, at 2.) Ms. Roos "first became involved in matters related to this case in February 2015 when PPG first learned that its confidential and proprietary technologies may have been misappropriated by" Defendants, and she was involved in "making the decision to retain . . . Quinn Emanuel[] in connection with this litigation." (ECF No. 172-1, at 1–2.) She describes the type of counsel that PPG sought when the dispute began as follows: "PPG immediately began to consider potential outside counsels with global resources, legal expertise[,] and other capabilities required to investigate and ascertain the scope of the potential misappropriation, coordinate with appropriate government agencies and federal law enforcement authorities conducting parallel criminal investigations and proceedings,[4] and otherwise protect PPG's interests around the globe." (*Id.* at 2.) Further, she states that not only did Quinn Emanuel possess those essential capabilities, but that PPG "could [also] not identify any firm headquartered in this forum" with equivalent expertise. (*Id.*). Ms. Roos's Declaration also reveals that she has been employed by PPG for more than 30 years, and she executed the Declaration in Pittsburgh, which suggests that

---

[4] These federal criminal investigations and proceedings were those directed at Thomas Rukavina, the former PPG employee who sold PPG's trade secrets to Defendants.

she is knowledgeable about possible outside counsel for PPG in the Pittsburgh area in addition to non-forum counsel or was at least situated to make that assessment. (*Id*. at 1, 4.)

PPG also emphasizes in its Supplemental Motion what the Court observed in its March 31, 2020 Opinion: "[e]ven if there was a law firm headquartered in this forum who could have filed the lawsuit against Defendants in the first instance, PPG correctly anticipated that it would have been virtually certain that any such law firm would have had to use resources from one or more of its offices elsewhere, in this country or outside of it, to address all of the potential components of the litigation. . . . Otherwise, PPG would have been required to find new primary counsel in every state or forum where a discovery dispute or other proceeding arose." (ECF No. 172, at 9; *see* ECF No. 157, at 52.) Thus, PPG argues, its selection of counsel with "a reach far beyond this District, both geographically and by virtue of its experience and professional capabilities," was not only efficient, but also necessary. (ECF No. 172, at 9.) Finally, despite the virtual certainty that PPG would have needed to retain at least some attorneys located outside the forum and pay them at non-forum rates even if it retained counsel based in the forum, PPG still "retained local counsel . . . to assist with litigating this matter at forum rates." (*Id.* at 9–10.)

In response, Defendants urge the Court to apply across the board the default forum rate rule rather than the special expertise exception, and award PPG its attorneys' fees based on reasonable rates within the Pittsburgh, PA market, because "[n]ot only was local counsel for PPG capable of handling *the tasks for which Quinn Emanuel billed PPG*, but PPG has also failed to demonstrate how any of Quinn Emanuel's special 'capabilities' *were used to execute third-party discovery and default judgment motions-practice*." (ECF No. 176, at 9 (emphasis added).) Defendants assert that "Third Circuit district courts have viewed requests for application of the 'special expertise' exception in similar circumstances with skepticism," citing two district court

cases from this circuit in which the court held that the special expertise exception did not apply where the case involved primarily "default-related issues." (*Id.* at 7 (first citing *Princeton Digital Image Corp. v. Office Depot, Inc.*, 2017 WL 446122 (D. Del. Jan. 27, 2017); and then citing *Joe Hand Promotions, Inc. v. Tickle*, No. 4:12-cv-01874, 2016 WL 393797 (M.D. Pa. Feb. 2, 2016)).)

Based on the record now before it, the Court concludes that PPG has sufficiently demonstrated that the special expertise exception to the forum rate rule applies such that this Court may and will award PPG its attorneys' fees based on reasonable hourly rates within the Washington, D.C. market.

The Court first addresses Defendants' focus on PPG's alleged failure to demonstrate that PPG needed the services of attorneys with special expertise to complete routine tasks like third-party discovery and default judgment motions practice, tasks which became necessary after this action was filed and due to Defendants' absence from the litigation until the very end. This argument is inapposite. As the Court explained in its March 31, 2020 Opinion, "[t]he question of counsel's billable rate requires the Court to examine the state of play at the *front end* of this litigation" (ECF No. 157, at 48 (emphasis added))—a principle that Defendants appear to completely disregard. Considering the question of reasonable attorney billing rates from the point in time that Defendants do (that is, when PPG applied for and obtained a default judgment) would frustrate the purpose of the special expertise exception and render it irrelevant any time a case that begins as a matter plainly requiring such expertise later, eventually, and at whatever stage, becomes more "straightforward"—a consequence that becomes particularly appreciable in a situation like this in which a defendant elects to remain absent from the litigation until the eleventh hour.[5] Further, analyzing attorneys' fees petitions in this way would be inconsistent with how the

---

[5] And Defendants' characterization of this case as straightforward "is, to put it bluntly, revisionist history." *United States v. Connolly*, No. 16-cr-370, 2019 WL 2120022, at *6 (S.D.N.Y. May 2, 2019) (McMahon, Chief Judge). PPG

Third Circuit describes the special expertise exception and its mechanics. *See, e.g.*, *ICO II*, 426 F.3d at 705–07 (evaluating the fee proponent's efforts to find capable and willing forum counsel based on the party's efforts at the onset of the litigation). Thus, despite conclusions by some other district courts in this Circuit, to which Defendants cite, that appear to conduct the analysis differently (at least when a default judgment motion ensues),[6] this Court again concludes that it is to consider application of the special expertise exception from the standpoint of how the case appeared when it began.[7]

---

was confronted with the theft of its trade secrets in an international setting at a level that led to a federal criminal investigation, and needed to try to engage a cast of Defendants who had affirmatively absented themselves from any engagement with PPG on these matters, making this case anything but straightforward. And on top of that, as set out below, when Defendants' counsel began their engagement on Defendants' behalf, the legal work that *they* described as lying on the road ahead was anything but "straightforward."

[6] In each of the cases that Defendants cite to argue that a default judgment action does not warrant application of the special expertise exception, the district court rejected the special expertise exception on the basis that no special expertise was required to litigate an action that ended in a default judgment. *See Princeton Digital Image Corp.*, 2017 WL 446122, at *4 ("The default-related issues in this case were not issues that required 'the special expertise of counsel from a distant district.'" (citation omitted)); *Joe Hand Promotions, Inc.*, 2016 WL 393797, at *11 ("Although the underlying subject matter involved digital piracy, the procedural track the dispute took never surpassed a garden-variety, *pro se* default judgment action.").

However, in each of those cases, the district court did not appear to fully consider and credit the state of the case at the time that the prevailing party initially brought the action, which, as this Court has explained here and in its March 31, 2020 Opinion, is necessary to consider in order to determine whether the special expertise exception applies. Failing to consider the front end of the litigation would require plaintiffs to possess a crystal ball at the start of a lawsuit to discern with unerring accuracy the ultimate arc and outcome of the case—an impossible task—and it would categorically bar the special expertise exception any time that a case, no matter how complex it rationally appears at its inception, results in a victory through default judgment—which is an analysis that lacks support in prevailing case law. *See ICO II*, 426 F.3d at 705–07. Moreover, unlike in *Joe Hand Promotions, Inc.*, in this case, "the procedural track the dispute took" was much more complex than a mere non-answer from Defendants and a subsequent motion for default judgment based on the facts in the initial pleadings, as this Opinion explains.

[7] As an aside, even assuming that the reasonable billing rate is based on what a case ultimately becomes rather than what it reasonably appears to be at its inception, the Court observes without deciding that the special expertise exception would likely still apply here. While PPG ultimately prevailed against Defendants through a Motion for Default Judgment, informed largely by third-party discovery—which was extensive and made necessary by Defendants' own failure to engage in this litigation—such motions practice and discovery efforts were not simple, no matter how much Defendants try to paint them as such. Rather, PPG's litigation efforts "presented significant complexity given [both] the facts of the case" and "Defendants' refus[al] to participate in the litigation," the latter of which required PPG "to obtain critical information the hard way." (ECF No. 157, at 54.) And the case did not become simple after PPG filed its Motion for Default Judgment, either—instead, "[a]t the final hour, Defendants entered an appearance, [] moved to set aside the entry of default[,] . . . [and] also opposed PPG's motion for a default judgment," leading to briefing and oral argument on multiple, complex factual and procedural issues. (*Id.* at 3.)

To that end, PPG was more than justified in seeking out counsel with the required expertise to handle a case of this nature, and in particular this case. The Court explained as much in its March 31, 2020 Opinion, in which it described the facts involved at the start of this case, which consisted of "an ongoing federal criminal investigation into one of [PPG's] former employees accused of stealing valuable confidential documents and selling them to a foreign entity in violation of federal arms control regulations and confidentiality agreements with PPG." (ECF No. 157, at 51.) As the criminal complaint in the federal criminal case demonstrates, PPG was confronted in early 2015 with the likely need to chase Defendants to the other side of the world to put an end to, and then to seek recompense for, the theft of its highly valued trade secrets by parties located in China— which soon became the reality after TMG's U.S.-based counsel in California contacted PPG's counsel seeking to discuss the case, only for Defendants to then "refuse[] to accept service of the complaint," refuse to "participate in the Telephonic Status Conference held by this Court" in October 2015, and never engage PPG via U.S.-based counsel again until 2019, when Defendants eventually entered the case with new, Pittsburgh-based lawyers to oppose PPG's Motion for Default Judgment. (ECF No. 107, at 5.)

Instead of acknowledging the complexity of the situation that PPG faced at the start of the case—generated by Defendants' multi-national misconduct and notwithstanding the momentary, informal involvement of non-forum counsel for TMG—Defendants seem to hope that this Court

---

While the Court's March 31, 2020 Opinion made these observations when discussing Defendants' opposition at the Motion for Default Judgment stage to the number of hours PPG's attorneys billed, such observations are also relevant to the reasonableness of PPG's claimed rates for non-forum counsel, especially if the Court would conduct that inquiry from Defendants' perspective that the back end of the litigation, rather than the front end, is the relevant point of reference.

Thus, it would also be fair for the Court to draw a conclusion consistent with Ms. Roos's Declaration that there were not counsel located in the forum that had the capabilities to successfully pick up this case from a standing start and then successfully perform those tasks that Quinn Emanuel performed for PPG, given that those tasks were the culmination of the necessarily extensive work done by the Quinn Emanuel law firm to get the case to that point. However, the Court need not conclusively resolve that issue given that the front end of the litigation is the appropriate measuring point as to whether the special expertise exception applies here.

will now decide that such a state of affairs is irrelevant to PPG's request for attorneys' fees and that the fees petition should be resolved solely based on the form of the last motion that led the case to its substantive conclusion. Because the premises for that argument are belied by the record, the applicable case law, and common sense, the Court declines to take that bait.

Despite the Court's prior conclusions that (1) this case was complex when it began, based on the underlying facts as well as on Defendants' location in China, which would require PPG to engage in global litigation efforts, and (2) Quinn Emanuel possessed the necessary expertise to take the case on, the Court concluded that PPG still needed to provide further evidence to support its request for an award based on prevailing rates within the Washington, D.C. legal market. And, as to that evidence, the Court now concludes that PPG's Supplemental Motion, including Ms. Roos's Declaration, is sufficient to support applying the special expertise exception to the forum rate rule. As the Court explained, a sworn account from a decision maker within PPG at the time the litigation began would help demonstrate the circumstances regarding options for counsel with the required capabilities to represent PPG in this action. (ECF No. 157, at 51 n.13.) Ms. Roos's Declaration does just that: in it, Ms. Roos states that PPG was unable to locate counsel in the forum that had the expertise to litigate this case, and that PPG knew it would need counsel with a global footprint, regardless of whether it also retained forum-based attorneys, given the international components of the case. (ECF No. 172-1, at 2–3.)

Ms. Roos also discusses Quinn Emanuel's "intimate understanding of the potential litigation issues in this matter" given that the firm "was already involved with PPG's internal review and coordination with federal law enforcement agencies in connection with Defendants' misappropriation of PPG's trade secrets," an effort that spanned three months (February through April 2015) before PPG filed this lawsuit in May 2015. (*Id.*) Quinn Emanuel's involvement in

legal matters stemming from the set of facts that led PPG to sue Defendants in this Court is a particularly relevant fact in deciding the attorneys' fees dispute in this case, as it provides a substantial basis from which to conclude that Quinn Emanuel's special expertise was required. While it is theoretically possible that a forum-based team of attorneys could have gotten up to speed on the vast body of facts underlying the lawsuit despite having not participated in the related investigation that preceded it, it would defy practical reason to require PPG to have its Quinn Emanuel attorneys drop everything and step aside from the extensive work they had already done so that forum-based counsel could then pick up the ball and begin to represent PPG in the litigation, all from a standing start.

And even if that had occurred, it would have logically been essential for Quinn Emanuel's lawyers to remain deeply involved so that PPG's litigation actions could effectively and efficiently follow the path plowed during the investigation of the trade secret theft that preceded this lawsuit. Without downplaying the extensive inherent professional capabilities of the Quinn Emanuel lawyers as reflected in the materials before the Court, the special expertise required to prosecute this case also stems largely from the need for continuity of representation in these factually, geographically, and legally complex matters—involving as they did the international transfer of highly valuable proprietary trade secrets to bad-faith actors located in China with the "inside" help of a former PPG employee who became the subject of an extensive federal criminal investigation and then prosecution. Such continuity and expertise would not be replicable easily or at all by other counsel no matter where domiciled.

Lastly, requiring PPG to hire only forum-based counsel to litigate the case would have been highly inefficient; would have involved significantly higher startup fees, expenses, and costs while forum-based counsel endeavored to learn the ins and outs of a highly complex, international

16

matter; and would have sacrificed for no sound reason the special expertise the Quinn Emanuel lawyers brought with them and built upon during their engagement.

Defendants attempt to refute the weight and import of Ms. Roos's Declaration by deeming it "conclusory." (ECF No. 176, at 7.) The Court disagrees with this characterization. Rather, PPG's Supplemental Motion, supported by Ms. Roos's Declaration, explains with particularity the facts and circumstances that contributed to this case's complexity, PPG's need for counsel with Quinn Emanuel's capabilities, and Ms. Roos's decisional processes in these regards. (*See, e.g.*, ECF No. 172-1, at 2 ("Faced with the potential of concurrent litigations in various forums throughout the country and potentially the world, federal law enforcement coordination, and the national security components of this matter, PPG retained Quinn Emanuel on this case's specific requirements. . . . As PPG considered potential outside litigation counsels for this matter, PPG could not identify any firm headquartered in this forum capable of providing equivalent expertise and capabilities in this case as those offered by Quinn Emanuel at the time.").)[8] In the Court's estimation, perhaps the only thing "conclusory" about Ms. Roos's Declaration is Defendants' resistance to its conclusions.

The Court could end its special expertise exception analysis there. However, the Court also believes it appropriate to observe that not only has PPG presented the required support for application of the special expertise exception as to PPG's attorneys' fees, but Defendants' own decision to retain Duane Morris LLP to defend them, while not relieving PPG of its burden to

---

[8] Defendants also argue that parties seeking attorneys' fees must provide more than "their own affidavits" to meet their burden of proving the fees are reasonable. (ECF No. 176, at 4 (first citing *Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996); and then citing *I.W. v. Sch. Dist. of Phila.*, No. 14-1341, 2016 WL 147148, at *5 (E.D. Pa. Jan. 13, 2016)).) Defendants are correct that courts in the Third Circuit require more than the affidavits of the party seeking attorneys' fees or of the party's attorneys for which fees are sought, but courts ordinarily require such evidence for the purpose of determining whether the claimed rates are reasonable—not for determining whether a court should apply the special expertise exception and award fees based on the rates in the forum in which the attorneys practice. Thus, the Court reserves its discussion of the sufficiency of PPG's evidence supporting Quinn Emanuel's rates for the next section in which the Court assesses the reasonableness of those rates.

support its assertion that the special expertise exception applies to its attorneys' fees request, also strongly suggests the necessity of counsel in this case having special expertise. Here's why.

Duane Morris is an Am Law 100 law firm with a global presence. *See* https://www.duanemorris.com/site/about.html. When Defendants retained Duane Morris in September 2019 to fight the Motion for Default Judgment, "the hourly rate for the primary attorney . . . responsible for representing Defendants in this matter before this Court was $750 per hour." (ECF No. 177, at 6–7 (citing ECF No. 172-1, at 69).) When Duane Morris came on board, it told its own clients—that is, Defendants—"[y]ou should note that this will be a challenging case given the procedural posture," "[w]e are informed that you understand that risk," and "if the default c[ould] [not] be set aside, [the firm] w[ould] seek to limit damages awarded in that judgment, appeal damages awarded in the default judgment, and negotiate settlement with opposing counsel." (ECF No. 172-1, at 68.) Thus, Defendants' own selection of counsel to represent them in this highly complex matter—given the gravity and complexity of the underlying claims and the way the case had evolved due to Defendants' refusal to participate in the litigation—is consistent with PPG's assertions that a law firm with special expertise, whose attorneys charge rates higher than forum rates, was required for this case.[9]

Finally, the Court notes that even if it were to apply the forum rate rule instead of the special expertise exception to determine the reasonable hourly rate for PPG's attorneys' fees award, the billing rates for Defendants' own forum-based attorneys in this case are persuasive

---

[9] And, as Duane Morris explained to Defendants, a large part of the case's complexity at the time Duane Morris entered the picture was the result of the "procedural posture" at that time—*i.e.*, Defendants need to defend against a Motion for Default Judgment. If the Court were to consider the applicability of the special expertise exception from Defendants' point of view—*i.e.*, from the back end rather than the front end of the case—Defendants' own choice of counsel with the goal of successfully navigating through a complicated default judgment proceeding would be even more relevant to whether the special expertise exception applies as to the fees PPG incurred through *its* representation in the case. Consequently, Duane Morris' own statements about the complexity of this matter when it came on board at the Motion for Default Judgment stage belie the Defendants' argument that the legal work in this case on behalf of PPG was essentially no big deal. Quite the contrary.

(though not definitive) evidence not only of the level of expertise actually needed to represent a client in this lawsuit, but also of the prevailing forum rate for the lawyers required to litigate a case of this nature. In pointing out to the Court that "the hourly rate for the primary attorney at Duane Morris responsible for representing Defendants in this matter before this Court was $750 per hour," PPG also notes that "Quinn Emanuel's blended rate for all of its attorneys in this matter [wa]s approximately $782 per hour," *i.e.*, approximately a "mere[] $30 more than opposing counsel's September 2019 hourly rate" when it began representing Defendants. (ECF No. 177, at 6–7 (citing ECF No. 172-1, at 69).) In the specific circumstances of this case—one that involved a global scheme among PPG's competitor and PPG's former employee to steal PPG's confidential information that resulted in a federal criminal investigation and prosecution and the civil lawsuit before this Court, in which PPG sought to recover its losses from evasive opponents after the former employee directly involved had taken his own life—the Court agrees with PPG that "Defendants can[not] meaningfully contend that Quinn Emanuel's hourly rate is unreasonable or otherwise inconsistent with the prevailing rates of this forum" for counsel with the capabilities the litigation required. (*Id.* at 7.)

In other words, the nature of this lawsuit and the proximity of the hourly rates of Defendants' lead counsel and of PPG's counsel—while not excusing PPG of its burden to demonstrate, on its own and without regard for the counsel that Defendants hired, that its requested fees are reasonable—suggests that that those rates were likely equal or very close to the prevailing rates for forum-based counsel for litigating this precise lawsuit. Thus, even if PPG had fallen short of its obligation to demonstrate that application of the special expertise exception is warranted, the Court could fairly conclude that a reasonable hourly rate within the forum for attorneys as to this case is similar to the rates PPG seeks in its fees request considering, among other things, the "local"

hourly rates charged by Defendants' Pittsburgh-based lawyers who were presumably retained to bring their "special expertise" to the eleventh hour defense of Defendants.

### ii.   Reasonableness of the Claimed Rates

Now that the Court has concluded that PPG has sufficiently shown Washington, D.C., where the involved Quinn Emanuel lawyers maintain their offices, to be the relevant market on which to base reasonable hourly rates, the Court must determine whether PPG's claimed rates for its Quinn Emanuel attorneys are reasonable. *See ICO II*, 426 F.3d at 708. In this regard, PPG has not met the mark.

PPG's Supplemental Motion and Reply do not sufficiently address whether Quinn Emanuel attorneys' rates for their work on this case are reasonable in light of prevailing market rates in Washington, D.C. for similar work by attorneys of similar skill, experience, and reputation. PPG's prior filings in support of its Motion for Default Judgment did address that issue generally, but only by asserting that courts had found Quinn Emanuel's rates to be reasonable in other unrelated, decade-old cases. Thus, on the whole, PPG appears to argue that it is entitled to fees based on the rates its Quinn Emanuel attorneys charged because PPG was required to hire non-forum outside counsel to litigate this case and because Quinn Emanuel's rates had been found reasonable by other courts at other times in other contexts, thereby allowing the Court to apply the billed rates "as is" via the special expertise exception to the forum rate rule. But the law does not support such an approach because it would in essence blend into one question what are in actuality two distinct questions of (1) whether prevailing market rates outside the forum are the appropriate measuring stick, and if they are, (2) whether the rates actually charged were reasonable.

In its prior filings supporting its attorneys' fees and costs petition, PPG broadly stated that Quinn Emanuel's rates are reasonable because other judges and arbitrators have concluded as

much in other matters, supplementing this claim with affidavits from PPG's Quinn Emanuel attorneys. (ECF Nos. 107, at 24 ("The hourly rates of Quinn Emanuel . . . attorneys charged in complex commercial matters, like this one, are reasonable."); 107-3, at 2 (Declaration of Alexander J. Merton, Quinn Emanuel Associate (now Partner)) (citing court and arbitration opinions that concluded that Quinn Emanuel's rates in other situations were reasonable); 121-1, at 4–5 (Declaration of William A. Burck, Quinn Emanuel Partner) (citing the same sources and adding that Quinn Emanuel "competes with major firms worldwide," "has received recognition as one of the leading law firms in the United States and internationally," and has been ranked "among the top six business litigation departments in the United States").) However, such assertions fall short of meeting PPG's burden to show "what constitutes a reasonable *market* rate for the essential character and complexity of the legal services *rendered*," *Smith*, 107 F.3d at 225 (emphasis added)—in other words, to produce evidence of reasonableness in the context of the case at hand, based on the relevant market, the year(s) in which the case took place, and the type of work the case involved—and to do so using evidence beyond PPG's own attorneys' affidavits, *ICO II*, 426 F.3d at 708.

Moreover, the sources that PPG and its Quinn Emanuel lawyers have cited to argue that Quinn Emanuel's rates are reasonable actually show how PPG's reasonableness argument falls short. Compared to PPG in this case, which has argued that its Quinn Emanuel attorneys' rates are reasonable based on generalized statements by those attorneys, the parties in the cited prior matters produced more evidence, such as affidavits from non-Quinn Emanuel attorneys attesting to the fees' reasonableness for the cases involved, a declaration from an "expert" on attorney's fees in the type of case involved, and survey data reflecting billing rates of comparable firms. *See* Report and Recommendation of Special Master, *Transweb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-

04413-FSH (D.N.J. Sept. 24, 2013) (ECF No. 567, at 31–33); Motion for Attorney Fees
Memorandum of Points and Authorities, Declaration of Barrett S. Litt, *Riverside Cnty. Dep't of
Mental Health v. A.S.*, No. 08-cv-00503-ABC (C.D. Cal. July 17, 2009) (ECF No. 103-12, at 4);
Order re: Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and
Compensation to Representative Plaintiffs, *Bistro Executive, Inc. v. Rewards Network, Inc.*, No.
04-cv-4640-CBM (C.D. Cal. Nov. 19, 2007) (ECF No. 357, at 6). In addition, the fees awards cited
by the Quinn Emanuel professionals and upon which PPG relies in these regards are rather dated,
with those decisions being issued in 2007–2013, for legal work performed in the years prior. (ECF
Nos. 107-3, at 2; 121-1, at 4–5.)

Despite digging through the record in this case, including briefing submitted well before
and separately from the presently pending Supplemental Motion for Attorneys' Fees, Expenses,
and Costs, the Court concludes that PPG has not offered sufficient evidence that its Quinn Emanuel
attorneys' non-forum hourly rates are "reasonable market rate[s] for the essential character and
complexity of the legal services rendered," *Smith* 107 F.3d at 225. But at the same time, the Court
recognizes that its March 31, 2020 Opinion that deferred PPG's award of attorneys' fees, expenses,
and costs focused on two primary issues that PPG needed to further address—application of the
special expertise exception to the forum rate rule, and the level of detail supporting the number of
hours and the expenses and costs underlying the request—but did not focus on the issue of whether
the rates that Quinn Emanuel charged PPG are reasonable. And the Court's areas of focus on those
discrete issues in its prior Opinion as to attorneys' fees and costs mirrored those of the parties in
their briefs.

While PPG has not demonstrated the reasonableness of the rates on which it bases its fees
request, which controlling precedent requires PPG to do to recover fees at those rates, in light of

how the Court addressed only other fees award issues in its March 31, 2020 Opinion, in fairness

to the parties, the Court will provide PPG one final opportunity to make that demonstration as to

all of the hourly rates that Quinn Emanuel professionals charged PPG in this matter and will

provide Defendants the opportunity to also address such submissions. Thus, the Court will order

PPG to file a supplemental brief and supporting materials addressing solely the issue of whether

the hourly rates that its Quinn Emanuel attorneys charged in this matter are reasonable for attorneys

within the Washington, D.C. market of similar experience, skill, and reputation performing similar

services, such that the Court may use them in fixing PPG's fees award. The Court will further

authorize Defendants to respond to PPG's brief and allow PPG to file a reply.[10] Once such briefing

on this issue is complete, the Court will finalize PPG's attorneys' fees, expenses, and costs award

based on the evidence in the record at that point.[11]

### B. <u>Reasonable Number of Hours</u>

In its March 31, 2020 Opinion deferring the award of attorneys' fees, expenses, and costs,

the Court concluded that PPG had not provided hours information that was "specific enough for

the Court to carry out its obligation to scrutinize PPG's request." (ECF No. 157, at 53.) PPG's

---

[10] Given the extensive briefing on attorneys' fees that has already occurred in this case, the Court will not permit PPG to include in its requested attorneys' fees, expenses, and costs the time spent on the further limited briefing the Court will order pursuant to this Opinion.

[11] Should the Court conclude at that point that PPG has not demonstrated that its Quinn Emanuel attorneys' hourly rates were reasonable, the duty to determine reasonable hourly rates would still fall to the Court. *See Arlington Indus., Inc.*, 2016 WL 3522964, at *2 (citing *Becker*, 15 F. Supp. 2d at 630 (citing *Washington*, 89 F.3d at 1036)). To make that determination, the Court would consider its own assessment of the complexity of the case, skill of PPG's Quinn Emanuel attorneys, and results PPG obtained, *Becker*, 15 F. Supp. 2d at 630–31, as well as a recognized, reliable measure of reasonable hourly rates for similar services by Washington, D.C.-based attorneys—specifically the Laffey Matrix, which the Third Circuit and the D.C. Circuit have recognized as a reliable measure of reasonable hourly rates in the D.C. market, *see ICO II*, 426 F.3d at 710; *DL v. District of Columbia*, 924 F.3d 585, 591–94 (D.C. Cir. 2019).

Thus, in the interest of finalizing PPG's fees award as efficiently as possible, the Court will also order that PPG provide specific information, along with its supplemental brief, that will allow the Court to award attorneys' fees to PPG with consideration of the Laffey Matrix in the event that the Court concludes that it is obligated to fulfill its duty to independently determine the reasonable hourly rates.

attorneys' fees request in its Motion for Default Judgment included the total number of hours that Quinn Emanuel professionals had billed on the case from its inception, as well as the total number of hours per professional per invoice. (*See* ECF No. 121-1, at 57–201.) The Court concluded that that level of detail was insufficient to allow Defendants to raise specific objections to the hours billed or to allow the Court to "go line, by line, by line through [the] billing records" to determine the reasonableness of the hours billed. (ECF No. 157, at 53 (quoting *ICO II*, 426 F.3d at 713).) Thus, the Court instructed PPG to include more detailed information on the number of hours its attorneys billed in its supplemental briefing. (*Id.*)

In response, PPG includes far more granular billing information in its Supplemental Motion than it provided previously, in the form of 51 pages of individual billing entries in chronological order, with each entry including the name of the Quinn Emanuel professional, date, number of hours, and description of work performed. (*See* ECF No. 172-2, at 4–54.) PPG asserts that this information, coupled with the Declarations of PPG's outside litigation counsels, is sufficient support for its attorneys' fees request. (ECF No. 172, at 10.)

Further, PPG argues that the number of hours is reasonable given "the lack of adversarial litigation" on behalf of Defendants that instead required PPG's attorneys to spend "hours on third-party discovery and default motions practice," as well as the "additional time and resources preparing in good faith for the mediation this Court ordered" on the issue of damages. (*Id.* (quoting ECF No. 157, at 54) (citing ECF No. 158, at 3).)[12] PPG's billing reports in its Supplemental Motion support PPG's claims as to the work required for this case; for example, the reports show the briefest of involvement of Defendants' prior U.S.-based counsel in the fall of 2015 that abruptly ended (*see* ECF No. 172-2, at 14–15), extensive research on and preparation for PPG's eventual

---

[12] The Court ordered that mediation after Defendants' counsel finally entered their appearance and attempted to set aside the default and oppose the Motion for Default Judgment.

Motion for Default Judgment (*see, e.g.*, *id.* at 12, 24, 27, 35), and preparation for mediation after the Court ordered the parties to attempt to resolve PPG's damages (*see id.* at 50–53). And, as the billing records demonstrate, Defendants' conduct required PPG's counsel to prepare and engage in wide-ranging third-party discovery with few, if any, geographical limits; the investigations attendant to it; and considerable ongoing coordination with the Department of Justice and the FBI as they sought to vindicate PPG's interests. Moreover, all of that necessary legal work was made all the more complicated as Defendants' nonengagement in this litigation continued.

In their Response to PPG's Supplemental Motion, Defendants' raise three objections to PPG's claimed number of hours. First, as to the form of PPG's supporting documentation, Defendants argue that "PPG has not outlined its fee request by [legal] claim [advanced], and therefore cannot meet its burden of establishing the reasonableness of the hours worked." (ECF No. 176, at 9–10.) "At a minimum," Defendants state, "the Court should exclude the charges obviously tied to claims for which it has not entered default, of which there are many" (*id.* at 10)— though Defendants identify no such charges. Next, as to the number of hours, Defendants assert that (1) the hours Quinn Emanuel billed are "facially excessive" and (2) the increase in the hours and associated fees PPG claims in its Supplemental Motion from those claimed in its prior Motion for Default Judgment is unreasonable. (*Id.*)

The Court first addresses the form of PPG's documentation as to the number of hours billed before addressing the number itself. Under Third Circuit law, the chronological list of individual billing entries that PPG has provided in its Supplemental Motion is plainly sufficient such that the Court can determine if the hours claimed are reasonable. *See ICO II*, 426 F.3d at 703; *Washington*, 89 F.3d at 1037–38 (first citing *Rode*, 892 F.2d at 1190–91; and then citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992)) (explaining that computer-generated,

chronological lists of billing entries reflecting the tasks performed, attorneys who performed them, and time spent on the tasks constitute adequate documentation for the reasonable number of hours inquiry).

Further, PPG is not required, as Defendants contend, to separate the fees it seeks on a claim-by-claim basis, even though it "only moved for default judgment as to one of its seven claims," as Defendants contend. (ECF No. 176, at 9–10.) In making this argument, Defendants run contrary to Supreme Court and Third Circuit cases that explain that separating fees by claim is usually nearly impossible, as well as unnecessary, when claims are based on a "common core of facts" and are "intertwined" such that "work performed on one would likely have had value for the others." *Tenafly Eruv Ass'n, Inc.*, 195 F. App'x at 98 ("In this context, we conclude that the issues presented by appellants are sufficiently linked such that work performed on one would likely have had value for the others. It would therefore be 'difficult to divide the hours expended on a claim-by-claim basis, . . . and we decline appellees' invitation to do so. Appellants' arguments 'cannot be viewed as a series of discrete claims,' but are instead merely 'alternative legal grounds for [the] desired outcome,' . . . and we will award fees for work performed on all claims." (quoting *Hensley*, 461 U.S. at 435)).

Here, PPG's claims that it advanced under three distinct areas of law all stem from a common core of facts: Defendants' coordinated effort to steal PPG's trade secrets. Therefore, despite not specifying which claims are associated with which tasks, PPG's hours-related information is sufficient to allow the Court to examine the hours for reasonableness.

Given that PPG's Supplemental Motion is specific enough as to hours billed, the Court's next task is to determine if the hours claimed are reasonable. *Washington*, 89 F.3d at 1037. As the Court noted in its March 31, 2020 Opinion, the Court "may not reduce an [attorneys' fees] award

*sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." *ICO II*, 426 F.3d at 711 (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 719 (3d Cir. 1989)). However, while "the District Court is entitled to help from the fee objector" in its assessment of whether the fees request is reasonable, generalized objections may still be sufficient and do not relieve a court of its role to confirm the reasonableness of the hours or other aspects of the fee request. *Id.* at 713–14; *see Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) ("[T]he District Court has a positive and affirmative function in the fee fixing process, not merely a passive role.").

Neither of Defendants' objections to the number of hours that PPG claims provides a basis from which to conclude that the hours are unreasonable. The first objection—that the number is "facially excessive"—is simply too general for the Court to decipher any specific issues that Defendants claim might exist as to the number of hours. Even if this were an adequate objection, the Court, in performing its independent function of confirming that the hours are reasonable, would not agree that the hours are excessive. The Court's line-by-line review of the billing entries that PPG provides in its Supplemental Motion demonstrates that the task descriptions are specific and facially relevant to the issues presented at various stages of the lawsuit, and that the time associated with those tasks appears to be reasonable under the circumstances that were generated principally by the Defendants themselves. Simply put, the Court's examination does not reveal that the tasks performed and hours expended were "excessive, redundant, or [] unnecessary" or otherwise facially unreasonable, and Defendants have not provided a sufficient basis for the Court to conclude otherwise.

The Court also concludes that Defendants' second objection to the number of hours—that the increase in hours between the Motion for Default Judgment and Supplemental Motion for

Attorneys' Fees is unreasonable—lacks merit. The increase of 567.4 hours that Quinn Emanuel attorneys spent between PPG's May 24, 2019 Motion for Default Judgment and its June 22, 2021 Supplemental Motion for Attorneys' Fees (*compare* ECF No. 121-1, at 4 (reporting 1964.4 total hours), *with* ECF No. 172-2, at 55 (reporting 2531.8 hours)) appears to the Court to be consistent with the events of the litigation occurring during the time between those motions. Those events include, but are not limited to, responding to Defendants' October 17, 2019 Motion to Set Aside Default, preparing for and participating in an oral argument as to the Motion for Default Judgment and Motion to Set Aside Default, and preparing the supplemental briefings the Court required as to PPG's claimed damages—all of which is a far cry from simply "essentially waiting for the Court to issue a final order of default judgment," as Defendants claim was all that PPG was doing during that time interval. (ECF No. 176, at 10.)

In sum, the Court concludes that the number of hours that PPG's Quinn Emanuel counsel billed and on which PPG bases its Supplemental Motion is reasonable and that PPG's attorneys' fees award will reflect all claimed hours.

### C.  Expenses and Costs

As to costs and expenses, the Court concluded in its March 31, 2020 Opinion that "many of PPG's costs and expenses requests [were] too vague for the Court to scrutinize," and explained that PPG's attorneys' fees request in its Motion for Default Judgment included total figures for general categories of expenses and fees over the course of the litigation, rather than individual entries that the Court could review with the required level of scrutiny. (ECF No. 157, at 54; *see* ECF No. 121-1, at 5–7.) As to PPG's travel expenses specifically, the Court concluded that PPG needed to better explain the request, because under the special expertise exception to the forum rate rule, a party "usually cannot recover the cost of counsel's travel to and from the forum." (ECF

No. 157, at 54–55 (citing *ICO II*, 426 F.3d at 710).) As it did regarding PPG's billable hours reports, the Court instructed PPG to further detail its expenses and costs requests in its supplemental briefing. (*Id.* at 55.)

PPG's Supplemental Motion provides, in chronological order, "line-by-line details of PPG's request for reasonable expenses and costs, similar to the details PPG has provided for its billable hours request." (ECF No. 172, at 11; *see* ECF Nos. 172-2, at 55–66.) Defendants make similar objections to the claimed expenses and costs as they do on the issue of number of hours, arguing that the descriptions of the expenses and costs are "vague" and not "tied to [PPG's] PUTSA claim" and that the "costs are duplicative" and thus excessive. (ECF No. 176, at 11.)

First, the Court concludes that, as is true for PPG's claimed number of hours, the documentation supporting its claimed expenses and costs is sufficiently detailed. *See Tenafly Eruv Ass'n*, 195 F. App'x at 102 ("Appellants have submitted a detailed, itemized list of these expenses that is over 40 pages long, and we therefore reject appellees' argument that the expenses are not documented sufficiently."). The Court is not persuaded by Defendants' characterization of the expense descriptions as too vague or general. Unlike descriptions of work performed, descriptions of expenses incurred do not lend themselves to significant detail beyond the type of expense (*e.g.*, "document reproduction" and "word processing"); further, for the same reason expressed above, PPG is not required to separate expenses and costs by the specific legal claim asserted against Defendants.

Next, the Court concludes that PPG's expenses and costs appear to be neither duplicative nor excessive. In particular, Defendants' attempt to spin "document reproduction" as a description that "inherently indicates that these costs are duplicative" (ECF No. 176, at 10–11) fails to move the Court. Both the dictionary and common sense suggest that "document reproduction" refers to

copying or similar activities that are among the most ordinary expenses that law firms incur in complex litigation.

Finally, as to travel expenses, the Court is satisfied with the explanation that PPG has provided as to travel expenses in its Supplemental Motion, which the Court concludes adequately addresses the issue that the Court identified in its March 31, 2020 Opinion. The Supplemental Motion clarifies that the travel expenses request is based "exclusively . . . [on] travel of [PPG's] outside litigation counsel(s) to California for meetings and interviews with PPG personnel . . . and to prepare for and participate in conferences with Defendants' counsels" and does not include costs associated with travel to this forum. (ECF No. 172, at 11.) Further, the individual billing entries provided with the Supplemental Motion confirm that travel to California for such purposes occurred. Thus, as the Court directed in its prior Opinion, PPG has "explain[ed] why the travel-related costs that it requests are consistent with Third Circuit case law," which prohibits inclusion of expenses for travel to and from the forum in an attorneys' fees award that applies the special expertise exception to the forum rate rule. (ECF No. 157, at 55.) This rule was the reason for the Court's concern regarding PPG's travel expenses request; therefore, the Court disagrees with Defendants that PPG has "not explain[ed] how its travel-related expenses are otherwise 'consistent with Third Circuit case law.'" (ECF No. 176, at 11 (quoting ECF No. 157, at 55).)[13]

Thus, the Court will award PPG all of its requested expenses and costs.

---

[13] PPG's Supplemental Motion highlights a lawsuit that TMG filed against PPG while the mediation that this Court ordered was pending. This Opinion does not consider that matter in reaching its conclusions here because that separate lawsuit has no bearing on the extent to which PPG should recover its attorneys' fees, costs, and expenses associated with the civil action before this Court.

IV.    **CONCLUSION**

Throughout this dispute over attorneys' fees, expenses, and costs, Defendants have expressed alleged confusion about and fierce opposition to PPG's requested figures, applying reasoning that is inconsistent with prevailing law and that ignores the underlying context of the matters at the center of this litigation. In the Court's estimation, Defendants are the authors of their own tale of woe as to many of the contested issues related to fees, expenses, and costs in this case. Had Defendants not generated the state of affairs present in this case by colluding with a PPG insider to misappropriate PPG's confidential information and then playing dodgeball by refusing to participate in the resulting litigation for as long as they did, the outcome of PPG's Supplemental Motion might look different. But on the record as it now exists, the Court concludes that PPG is entitled to recover attorneys' fees for the work of its Quinn Emanuel attorneys at non-form rates for all hours that those attorneys billed as well as all expenses and costs that PPG's Quinn Emanuel attorneys incurred.

That said, the Court also concludes that PPG has not produced sufficient evidence demonstrating that its Quinn Emanuel attorneys' hourly rates are reasonable. The Court will order PPG to provide one additional supplement as to its Quinn Emanuel attorneys' hourly rates according to the Court's instructions in its Order of this date, such that the Court can determine whether PPG's requested hourly rates are reasonable.

Thus, the Court **GRANTS** in part PPG's Supplemental Motion for Attorneys' Fees, Expenses, and Costs (ECF No. 172) and **ORDERS** that further briefing from PPG and Defendants—on the sole issue of whether the rates that Quinn Emanuel charged PPG were reasonable within the Washington, D.C. market for attorneys of similar experience, skill, and

reputation performing the services that Quinn Emanuel performed—is authorized by the Court's

Order of this date.

      An appropriate Order will issue.


                                 s/ Mark R. Hornak
                                 Mark R. Hornak
                                 Chief United States District Judge

Dated: January 27, 2022
cc:    All counsel of record